IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA L.,[1]

                Plaintiff,

        v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

              Defendant.

Case No. 3:20-cv-00580-CL

**OPINION AND ORDER**

---

**CLARKE, U.S. Magistrate Judge.**

    Lisa L. ("Plaintiff") brings this appeal challenging the Acting Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

Social Security Act ("Act"). The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42

U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge

---

    [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff filed her application for DIB and SSI on October 25, 2012, alleging disability as of October 1, 2012, due to three collapsed disks in her neck, lower back injuries, and anxiety. (Tr. 110-11.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 614.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which

was held on May 13, 2015. (Tr. 614.) After a consultative examination, the ALJ conducted a

supplemental hearing on November 19, 2015, during which Plaintiff and a vocational expert

("VE") testified. (Tr. 614.) On March 2, 2016, ALJ Sue Leise issued a written decision denying

Plaintiff's application. (Tr. 17-32.) The Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the final decision of the Commissioner. (Tr. 614.) Plaintiff sought

judicial review of that decision and on September 19, 2018, the court reversed and remanded for

further proceedings. (Tr. 612.)

On remand the Appeals Council noted Plaintiff filed a subsequent paper claim for Title II

benefits on November 13, 2017, that appeared to be a duplicate claim, with the same date last

insured as in the present claim of December 31, 2013. (Tr. 632.) The Appeals Councils also

noted that the subsequent claim was currently pending at the hearing level. (Tr. 632.) On remand,

the Appeals Council instructed the ALJ to consider whether the subsequent claim should be

consolidated with the current claim. (Tr. 632.) If so, the ALJ was directed to consolidate the

claims files, associate the evidence, and issue a new decision on the consolidated claims. (Tr.

632.) The ALJ was further instructed to offer the Plaintiff the opportunity for a hearing, address

the additional evidence submitted, take any further action necessary to complete the

administrative record, and issue a new decision. (Tr. 632.)

Pursuant to a remand from the United States District Court for the District of Oregon, the

Plaintiff appeared and testified at a hearing held on November 19, 2019. (Tr. 538-602.) On

February 3, 2020, ALJ Sue Leise issued a written decision denying Plaintiff's application. (Tr.

514-28). The ALJ's decision became the final decision of the Commissioner on April 4, 2020,

the 61st day following the February 3, 2020, notice of decision. (Tr. 511-12.) Plaintiff now seeks

judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 514-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 1, 2012, the alleged onset date. (Tr. 516.) At step two,

PAGE 4 – OPINION AND ORDER

the ALJ determined that Plaintiff suffered from the following severe impairments: "lumbar

degenerative disc disease, status post cervical fusion, left knee joint effusion, right

hip/acetabulum degenerative cystic change (20 CFR 404.1520(c) and 416.920(c))." (Tr. 517.)

The ALJ recognized other impairments in the record, i.e., blurry vision from bilateral macular

puckering, a fracture in her left ring finger, depression, and anxiety, but concluded these

conditions to be non-severe. (Tr. 517.) At step three, the ALJ concluded that Plaintiff did not

have an impairment that meets or equals a listed impairment. (Tr. 518.) The ALJ then concluded

that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in

20 CFR 404.1567(b) and 416.967(b)" subject to these limitations:

> [Plaintiff] can lift and carry 10 pounds frequently and 20 pounds occasionally, stand
> and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour
> workday; no climbing of ladders, ropes, scaffolds, occasionally kneel, crouch, and
> crawl; only occasional overhead reaching bilaterally, frequent handling and
> fingering bilaterally; should avoid exposure to excessive vibration; no work around
> hazards such as unprotected heights and dangerous machinery; and should not
> maintain her neck in an awkward or in a stationary position for extended, long
> periods, but normal flexion is tolerated.

(Tr. 518-19.) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant

work as a cosmetologist (DOT 332.271-010). (Tr. 527.) Accordingly, the ALJ found that

Plaintiff was not disabled under the Act and denied her application for disability benefits. (Tr.

527.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's

subjective symptom testimony; and (2) improperly discounting the medical opinions of Dr.

Ellison and Dr. Adams, and not addressing the opinion of Dr. Polin. (Pl.'s Br., ECF No. 26, at

16, 23.) As explained below, the Court concludes that the Commissioner's decision is free of

harmful legal error and supported by substantial evidence in the record. Accordingly, the Court

affirms the Commissioner's denial of benefits.

## I.    LAW OF THE CASE DOCTRINE DOES NOT APPLY

The Commissioner argues the "law of the case" doctrine precludes Plaintiff's arguments

about the ALJ's evaluation of her symptom testimony. (Def.'s Br., ECF No. 28, at 2.) The Court

disagrees.

### A.    Applicable Law

The Ninth Circuit addressed the law of the case doctrine in social security cases in *Stacy*

*v. Colvin*, 825 F.3d 563, 567–68 (9th Cir. 2016). According to the *Stacy* court, "[t]he law of the

case doctrine generally prohibits a court from considering an issue that has already been decided

by that same court or a higher court in the same case." *Id.* at 567. The court also observed that

"[t]he doctrine is concerned primarily with efficiency, and should not be applied when the

evidence on remand is substantially different, when the controlling law has changed, or when

applying the doctrine would be unjust." *Id.* A district court's decision to apply the law of the case

doctrine is discretionary. *Id.*

### B.    Analysis

On remand, the Appeals Council instructed the ALJ to consider whether Plaintiff's

subsequent Title II claim should be consolidated with her first claim. (Tr. 632.) If so, the ALJ

was directed to consolidate the claims files, associate the evidence, and issue a new decision on

the consolidated claims. (Tr. 632.) The ALJ was further instructed to offer the Plaintiff the

opportunity for a hearing, address the additional evidence submitted, take any further action

needed to complete the administrative record, and issue a new decision. (Tr. 632.) The ALJ

consolidated Plaintiff's claims and submitted additional evidence to the record in assessing

Plaintiff's consolidated claim on remand. (Tr. 514.) Plaintiff's consolidated claim contains

PAGE 6 – OPINION AND ORDER

additional evidence obtained after her initial hearing on, May 13, 2015. Therefore, the law of the case doctrine should not be applied because the evidence on remand is substantially different.

### C.    Conclusion

For these reasons, the Court concludes the law of the case doctrine did not preclude Plaintiff's arguments about the ALJ's evaluation of her symptom testimony. However, as discussed below, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony.

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL

PAGE 7 – OPINION AND ORDER

2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

Cir. 1997)).

###    B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided

objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 519, the ALJ determined that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms; however, the

claimant's statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the

record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for

discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ

satisfied that standard here.

###    1.    Daily Activities

The ALJ discounted Plaintiff's symptom testimony based on her daily activities. (*See* Tr.

26.) An ALJ may discount a plaintiff's testimony based on activities that are incompatible with

the plaintiff's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d

1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the

claimant's reported activities provide a valid reason for an adverse credibility determination.");

*Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her]

credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed

limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with

the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount her testimony based on her reported activities. (*See* Pl.'s Br. at 22-23, arguing "The ALJ was required to demonstrate that these basic activities are performed at a level that transfers to the demands of competitive employment. *See Garrison*, 759 F.3d at 1016. The ALJ showed no such correlation.") The Court disagrees. An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Court finds that the ALJ satisfied that standard here.

The ALJ cites to Plaintiff's testimony that she is unable to work a fulltime job due to neck, back, and hip pain. (Tr. 519.) The ALJ further notes that Plaintiff alleges her pain is overwhelming, and when she is not working as a hairdresser, she spends her time lying in bed. (Tr. 519.) Additionally, the ALJ notes Plaintiff's claims that she is unable to walk, does few chores due to pain, has difficulty sleeping due to pain, and has difficulty moving her neck. (Tr. 519.) The ALJ also notes that Plaintiff reported being able to stand for five hours at her job when required, and that this occurs two to three days a week. (Tr. 519.)

The ALJ contrasts the severity of Plaintiff's allegations by citing to instances in the record where Plaintiff's activities are inconsistent with the severity of symptoms alleged. Specifically, the ALJ notes that Plaintiff "rarely, if ever, told her healthcare providers that she was unable to engage in typical activities of daily living outside of her part-time hairdresser work, as indicated in her testimony." (Tr. 524.) The ALJ further notes that Plaintiff reported in October 2019 "that medication helped her be functional and to work as a hair dresser [sic], which seems inconsistent with her testimony of not being able to do much after her work shifts." (Tr.

524 (citing Tr.1103).) The ALJ elaborates that "[a]lthough the hairdresser work is part-time, it does seem somewhat inconsistent with the claimant's allegations of extreme limitations from her impairments." (Tr. 524.) The ALJ also notes a psychological examination from 2013, where Plaintiff reported engaging in self-care needs, such as, dressing, taking care of a pet, using a computer, spending time with family members, and using public transit, which the ALJ argues "seems inconsistent with the allegations of extreme limitations." (Tr. 524 (citing Tr. 377-78).) Moreover, the ALJ notes "the claimant denied that she shops for herself, but she had a minor eye injury in late 2015 while shopping, which suggests that some of the claimant's statements regarding her activities of daily living are not entirely reliable." (Tr. 524 (citing Tr. 378, 814).) The ALJ argues the Plaintiff's activities, including her part-time hairdresser work, "provide some support for finding that the claimant is capable of working at the light exertional level," but "emphasized that activities of daily living are only one factor considered in evaluating the consistency of the claimant's allegations, and the objective evidence and course of treatment discussed throughout this decision are more persuasive reasons for concluding that the claimant is capable of light work." (Tr. 524.) In the Court's view, Plaintiff's interpretation of the record is rational, but the ALJ's interpretation of the record is also rational and, therefore, must be affirmed.

### 2.    Contradictory Medical Evidence

The ALJ also discounted Plaintiff's symptom testimony based on conflicting medical evidence. The ALJ cites to Plaintiff's testimony that she is unable to work a fulltime job due to neck, back, and hip pain. (Tr. 519 (citing Tr. 282, 575-76).) The ALJ further notes that Plaintiff alleges her pain is overwhelming, and when she is not working as a hairdresser, she spends her time lying in bed. (Tr. 519 (citing Tr. 552).) Additionally, the ALJ notes Plaintiff's claims that she is unable to walk, does few chores due to pain, has difficulty sleeping due to pain, and has

PAGE 10 – OPINION AND ORDER

difficulty moving her neck. (Tr. 519 (citing Tr. 556, 558, 566).) The ALJ also notes that Plaintiff

reported being able to stand for five hours at her job when required, and that this occurs two to

three days a week. (Tr. 519 (citing Tr. 574).)

The ALJ cites extensively to medical evidence of record to show inconsistencies between

Plaintiff's allegations of the severity of her symptoms and the medical record. First, the ALJ

notes Plaintiff's neck and back pain are attributable to motor vehicle accidents in 2009 and 2010.

(Tr. 520 (citing Tr. 385).) The ALJ cites to Plaintiff's cervical fusion surgery in October 2012,

which Plaintiff reported significantly improved her symptoms. (Tr. 520 (citing Tr. 383).) The

ALJ highlights that Plaintiff reported being pleased with the surgery and that she had neck pain

with sustained repetitive neck or upper extremity use and could work only part-time due to her

symptoms. (Tr. 520 (citing Tr. 380).) The ALJ notes the record showed no signs of neurological

deficits. (Tr. 520 (citing Tr. 380).)

The ALJ asserts that after April 2013, Plaintiff does not appear to have seen a healthcare

provider for her impairments until September 2013, when she established care with a new

provider. (Tr. 520 (citing Tr. 413-14).) The ALJ argues this "gap in treatment suggests her

symptoms were at least somewhat less limiting than alleged in 2013." (Tr. 520.) Furthermore, the

ALJ notes, Plaintiff reported "back and neck pain, but when examined she did not exhibit pain

behavior, and it was noted that she had a normal musculoskeletal range of motion" and during an

examination "had full range of motion in the lumbar spine, but limited range of motion in the

cervical spine." (Tr. 520 (citing Tr. 414).)

With respect to Plaintiff's reports of an increase in left shoulder pain in December 2013,

the ALJ notes that her range of motion in her left arm significantly decreased and Tizanidine, a

muscle relaxer, was added to her medication regimen. (Tr. 520 (citing Tr. 404-06).) However,

the ALJ emphasized that by her January 2014 follow-up appointment, she had full range of motion in her shoulder, and it was recommended that she continue with her current medications. (Tr. 520 (citing Tr. 403).)

The ALJ emphasizes another gap in treatment from January 2014 to August 2014. (Tr. 520 (citing Tr. 441-46).) The ALJ asserts that this gap "suggests her symptoms were less limiting than alleged." (Tr. 520.) The ALJ further provides that an updated medical imaging of the spine and hips was obtained, and an MRI showed mild-moderate degenerative changes in the lumbar spine with mild spinal canal narrowing. (Tr. 520 (citing Tr. 441-46).) Additionally, the ALJ notes there were no signs of nerve root impingement, and an x-ray of the hips was unremarkable. (Tr. 520 (citing Tr. 441-46).) The ALJ notes "later imaging showed more significant pathology in the right hip," but Plaintiff's "allegations of extreme limitations from low back pain seem out of proportion to the mild-moderate lumbar disorder seen on the MRI." (Tr. 520.) The ALJ does note Plaintiff had pain with back range of motion noted in examinations, but she was not observed to have difficulty walking, showed no signs of focal neurological deficits, and exhibited only mild tenderness in the hips. (Tr. 520 (citing Tr. 441-46).)

The ALJ acknowledges an additional gap in treatment from August 2014 until April 2015 when Plaintiff sought emergency treatment for worsening back pain symptoms. (Tr. 520 (citing Tr. 463-64).) The ALJ again asserts the "gap in treatment suggests her symptoms were less limiting than alleged. It is also notable that despite reporting worsening back pain, she was not observed to be in distress or exhibit pain behavior, which suggests her pain was less limiting than alleged." (Tr. 521.)

With respect to Plaintiff's lifting and carrying limitations, the ALJ notes a consultative examination for disability determination services from June 2015, where Plaintiff reported being

PAGE 12 – OPINION AND ORDER

able to lift and carry twenty-five pounds, "which is inconsistent with her alleged inability to lift more than 10 pounds, and supports finding that she can lift 20 pounds occasionally without aggravating her pain symptoms." (Tr. 521 (citing Tr. 476).) The ALJ further notes that Plaintiff reported more significant limitations in standing, walking, and neck flexion, and in her examination, her neck range of motion was significantly limited, but "it is notable that she did not show this degree of limitation in other examinations." (Tr. 521 (citing Tr. 476).) The ALJ also noted that the examination showed Plaintiff had normal range of motion in the back and extremities, her strength and muscle tone was noted to be excellent, and she was not observed to have difficulty walking. (Tr. 521 (citing Tr. 476).) The ALJ asserts the "normal strength and lack of difficulty with ambulation strongly suggest that the claimant is capable of performing work at the light exertional level." (Tr. 521.)

With respect to Plaintiff's reported history of knee pain for six weeks in July 2015 and an x-ray showing signs of knee effusion, the ALJ notes that Plaintiff "did not report left knee to Dr. Ellison when seen in June 2015, and showed no signs of knee effusion in his examination. (Tr. 521 (citing Tr. 476-78, 1172-74).) This is inconsistent with her reported duration of knee pain symptoms." (Tr. 521.) Moreover, the ALJ notes that Plaintiff had a steroid injection for her knee symptoms and reported that this treatment provided her relief for several months. (Tr. 521 (citing Tr. 868).) Additionally, the ALJ notes that Plaintiff had no difficulty walking in November 2015 when she was seen for a minor leg injury, which the ALJ argues "suggests that she is capable of ambulating effectively despite her knee, hip, and back pain." (Tr. 521 (citing Tr. 1181).) The ALJ notes that Plaintiff reported in February 2016 that she wanted to delay getting another steroid injection for a long as possible, as it was painful and that is a somewhat reasonable explanation for delaying treatment, but the Plaintiff does not appear to have followed through

with getting another steroid injection during the period at issue, which the ALJ argues "suggests that her symptoms are less limiting than alleged, as she reported good relief with the first steroid injection." (Tr. 521.)

With respect to Plaintiff's pain symptoms, the ALJ notes that at an early 2016 appointment, it was noted that medications were helpful at managing her pain symptoms, and it was recommended that she continue her current medications. (Tr. 521 (citing Tr. 984).) The ALJ asserts this suggests Plaintiff's symptoms are less limiting than alleged. (Tr. 521.) The ALJ acknowledges that Plaintiff has decreased range of motion in the lumbar spine at this appointment, but notes she had full cervical range of motion in the cervical spine and did not exhibit signs of pain behavior. (Tr. 521 (citing Tr. 867-69).) From this, the ALJ concludes Plaintiff's neck range of motion was less limited than alleged. (Tr. 521.)

At the September 2016 appointment, the ALJ notes that Plaintiff again reported that her medications were helpful, and she exhibited no pain behavior during the examination. (Tr. 522 (citing Tr. 984-85).) The ALJ acknowledges that Plaintiff had some decrease in cervical spine range of motion, but notes the degree was not specified. (Tr. 522 (citing Tr. 984-85).) The ALJ also notes that Plaintiff did not seek additional evaluation or treatment for her impairments until February 2017 when she reported back pain from a fall. (Tr. 522 (citing Tr. 1195).) The ALJ notes, she followed up with a primary care provider for back pain in March 2017, where she had limited range of motion in the lumbar spine due to pain, but otherwise did not show signs of pain behavior. (Tr. 522 (citing Tr. 995-98).) The ALJ cites that she was scheduled for osteopathic manipulation, which is routine and conservative treatment for back pain, and declined a physical therapy referral. (Tr. 522 (citing Tr. 995-98).) In response to this evidence, the ALJ asserts that

"it seems likely that the symptoms reported in February-March 2017 were a temporary exacerbation from her fall." (Tr. 522.)

Furthermore, the ALJ highlights that the record does not show additional evaluation or treatment for back pain or other impairments until December 2017. (Tr. 522 (citing Tr. 1000-04).) At that time, the ALJ notes, she saw her primary care provider and reported having some numbness and tingling in her upper and lower extremities, and did not exhibit pain behavior, but had decreased range of motion in the neck and back and had difficulty lying flat for straight leg raise testing. (Tr. 522 (citing Tr. 1000-04).) The ALJ cites a recommendation for an updated MRI and Plaintiff's referral to a neurosurgeon. (Tr. 522 (citing Tr. 1000-04).) The ALJ notes the MRI showed signs of moderate lumbar degenerative changes with mild canal and mild-moderate foraminal narrowing and other medical imaging of the cervical spine showed stable post-operative changes and only mild degenerative changes. (Tr. 522 (citing Tr. 1208, 1211).)

The ALJ then discusses Plaintiff's visit with a neurosurgeon in January 2018. The ALJ notes that Plaintiff denied having any significant relief from the 2012 surgery, which "is inconsistent with statements she made in 2012." (Tr. 522 (citing Tr. 382-83, 970-710.) The ALJ highlights the neurosurgeon's findings that Plaintiff had mildly antalgic gait with good heel/toe gait and tandem gait, normal strength in the upper and lower extremities, and did not observe focal neurological deficits from her spinal disorders or decreased range motion in the spine. (Tr. 522 (citing Tr. 970-74).) The ALJ highlights that the neurosurgeon recommended physical therapy, which is routine and conservative for musculoskeletal pain. (Tr. 522 (citing Tr. 970-74).)

The ALJ notes that Plaintiff attended physical therapy from January to March 2018 and was noted to have mild deviation to the right in her gait, but otherwise had no difficulty walking.

PAGE 15 – OPINION AND ORDER

(Tr. 522 (citing Tr. 1216-34).) The ALJ cites Plaintiff's reports of difficulty balancing, which she attributed to vision problems, but notes her balance and walking improved with physical therapy. (Tr. 522 (citing Tr. 1234).) The ALJ also notes that the neurosurgeon noted an improvement in Plaintiff's back and neck pain from physical therapy, but acknowledged her symptoms persisted. (Tr. 522 (citing Tr. 975-76).) In response, the ALJ notes, the neurosurgeon offered a lumbar fusion surgery, but the Plaintiff did not follow up with the neurosurgeon after 2018, which "suggests her back pain is somewhat less limiting than alleged, as the back surgery could have provided relief for her symptoms." (Tr. 522 (citing Tr. 975-76).)

With respect to Plaintiff's hip pain, the ALJ cites to a May 2018 visit with an orthopedist where the orthopedist did not observe signs of pain behavior and the Plaintiff had full range of motion in the hips. (Tr. 522 (citing Tr. 897-98).) The ALJ notes updated medical imaging of Plaintiff's hips was recommended and an MRI showed a large amount of degenerative cystic change in the right acetabulum, and an x-ray showed dysplasia and mild-moderate degenerative changes. (Tr. 522 (citing Tr. 902, 908-09).)

The ALJ notes that Plaintiff sought emergency treatment for an exacerbation in neck and back pain in June 2018, where she reported that her pain was aggravated by working "all day long." (Tr. 522 (citing Tr. 1244-46).) The ALJ elaborated that she appeared uncomfortable, but was not in acute distress, and no signs of neurological deficits were noted; her strength was normal, and her neck was noted to be supple and non-tender. (Tr. 522-23 (citing Tr. 1244-46).) The ALJ notes Plaintiff was assessed with a cervical strain, and routine treatment with a lidocaine patch, and anti-inflammatory medications was recommended. (Tr. 523 (citing Tr. 1244-46).) In a July 2018 emergency room visit for her finger injury, the ALJ notes she was

ambulating without difficulty, and was described as having normal range of motion in the neck, normal strength, and good range of motion in the extremities. (Tr. 523 (citing Tr. 1256-57).)

The ALJ also cites to Plaintiff's August 2018 follow-up appointment with the orthopedist, where she complained of being unable to weight bear, which the ALJ states "seems very inconsistent with her testimony of working part-time as a hairdresser and standing for up to five hours." (Tr. 523 (citing Tr. 887-90).) The ALJ also notes an examination at this appointment that showed signs of pain at the extremes of hip range of motion and an antalgic gate. (Tr. 523 (citing Tr. 887-90).) The ALJ further notes as hip replacement was recommended, but the Plaintiff did not follow up with the orthopedist after the August 2018 appointment, which is "somewhat inconsistent with the claimant's allegations." (Tr. 523 (citing Tr. 887-90).)

The ALJ also notes that the record does not appear to show that Plaintiff saw a primary care provider or specialist specifically for her neck, back, knee, or hip pain symptoms in 2019. (Tr. 523 (citing Tr. 1024-48, 1082-1103).) The ALJ notes Plaintiff saw providers for other medical conditions during this time, which the ALJ asserts "implies that she could have seen a provider if her pain symptoms worsened" and no significant changes were made to her pain medication regimen. (Tr. 523 (citing Tr. 1024-48, 1082-1103).) The ALJ also noted that Plaintiff told a social worker in October 2019 that her pain medication helped her function and work as a hairstylist. (Tr. 523 (citing Tr. 1103).) Furthermore, the ALJ notes records showed pain behavior was not observed during appointments, her neck was most often noted to be supple, and she was not observed to have difficulty ambulating. (Tr. 523 (citing Tr. 1025, 1035, 1084, 1092).) The ALJ argues the "lack of changes in the course of treatment for pain symptoms in 2019 and the report of benefiting somewhat from medications, suggests that the claimant's symptoms are less limiting than alleged." (Tr. 523.) Moreover, the ALJ asserts the "limited observations of pain

behavior in 2019 appointments, the lack of observations of difficulty walking, and the reports of

the claimant's neck being supple also seem inconsistent with her allegations." (Tr. 523 (citing Tr.

1025, 1035, 1084, 1092).)

Lastly, the ALJ asserts Plaintiff's RFC accounts for Plaintiff's impairments, both singly

and in combination, by limiting her to the light exertional level. (Tr. 523.) The ALJ further

argues:

> Her impairments are further accounted for by restricting neck movements,
> environmental work conditions, and postural and manipulative activities that could
> aggravate her symptoms. The reports of hand numbness and nonsevere finger injury
> were considered in limiting her from constant handling and fingering. Her limited
> neck flexion was also considered in limiting her exposure to workplace hazards.
> Given the evidence of mostly routine and conservative treatment for pain symptoms
> since the 2012 cervical fusion surgery, the reports of benefiting somewhat from
> medications, the lack of follow-up for the recommended back and hip surgeries, the
> limited treatment for knee pain, the reports of normal strength in the upper and
> lower extremities, and the variable observations of neck range of motion and
> suppleness, the undersigned is not persuaded that the claimant's impairments would
> result in greater limitations to her residual functional capacity. The undersigned
> notes that the claimant's gait was sometimes observed to be antalgic, but at other
> times, she was noted to ambulate without difficulty, and as noted above, she had
> normal strength in the lower extremities, reported improved walking with physical
> therapy in 2018, and has not pursued much intervention for back and hip pain
> symptoms. Thus, the undersigned is not persuaded that the claimant is unable to
> ambulate effectively and finds that she can stand and walk for up to six hours in a
> normal workday, as required at the light exertional level.

(Tr. 523.)

It is appropriate for an ALJ to discount a claimant's symptom testimony based on

contradictory medical evidence. *See, e.g.*, *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir.

2019) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that

the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the

presence of "contradictory medical evidence" in the record). Plaintiff argues the ALJ did not

provide specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony.

PAGE 18 – OPINION AND ORDER

(Pl.'s Br. at 13.) In the Court's view, Plaintiff's interpretation of the record is rational, but the

ALJ's interpretation of the record is also rational and, therefore, must be affirmed. Accordingly,

the ALJ limited the Plaintiff to less than the full range of light work as defined in 20 CFR

404.1567(b). (Tr. 23.) These limitations adequately account for the Plaintiff's medically

determinable impairments. Given the evidence described above, the Court concludes that it was

reasonable for the ALJ to discount Plaintiff's physical symptom testimony on the ground that it

conflicted with the medical evidence.

### 3.    Conservative Treatment

The ALJ also relied on Plaintiff's positive response to conservative treatment. The

effectiveness of treatment or medication is a relevant factor in determining the severity of a

claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). It is well settled that an ALJ may discount a

claimant's testimony based on evidence of conservative treatment. *See Parra v. Astrue*, 481 F.3d

742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to

discount a claimant's testimony regarding severity of an impairment"). "[I]n assessing a

claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment.' " *Molina v. Astrue*, 674

F.3d 1104, 1113 (9th Cir. 2012), superseded by regulation on other grounds (quoting

*Tommasetti*, 533 F.3d at 1039).

The ALJ cites to several instances in the record where Plaintiff failed to pursue non-

conservative treatment options where ones existed. Specifically, the ALJ notes Plaintiff did not

follow up with her orthopedist after the August 2018 appointment regarding a recommended hip

replacement. (Tr. 523 (citing Tr. 887-90).) Additionally, the ALJ cites to Plaintiff's failure to

follow up with her neurosurgeon in 2018 regarding a lumbar fusion surgery. (Tr. 522 (citing Tr.

975-76).) Furthermore, the ALJ cites to multiple instances in the record where Plaintiff stated her

PAGE 19 – OPINION AND ORDER

medications were helping her symptoms. (Tr. 521, 522 (citing Tr. 984-85, 1103).) Therefore, the Court concludes the ALJ properly discounted Plaintiff's testimony based on evidence of conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

### 4.    Conclusion

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## III.    MEDICAL OPINION EVIDENCE

Plaintiff filed her application for DIB and SSI on October 25, 2012, alleging disability as of October 1, 2012. (Tr. 614.) Plaintiff filed an additional Title II claim on November 13, 2017, which appeared to be a duplicate claim, with the same date last insured as in the present claim of December 31, 2013. (Tr. 632.)  On remand the ALJ consolidated the two claims. (Tr. 514.) Therefore, the Court applies the regulations set forth for claims filed prior to the regulation change on March 27, 2017.[2]

---

[2] The Court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. §§ 404.1520c, 416.920c (not §§ 404.1527, 416.927) govern.  The new

A.    **Applicable Law**

"There are three types of medical opinions in social security cases: those from treating

physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc.*

*Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another

doctor, the ALJ must determine credibility and resolve the conflict." *Id.* (quoting *Thomas*, 278

F.3d at 956-57). "An ALJ may only reject a treating physician's contradicted opinions by

providing specific and legitimate reasons that are supported by substantial evidence." *Ghanim v.*

*Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is

insufficient: "The ALJ must do more than state conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs

when he rejects a medical opinion or assigns it little weight while doing nothing more than

---

regulations provide that the Social Security Administration "will not defer or give any specific
evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative
medical finding(s), including those from your medical sources."   20 C.F.R. §§ 404.1520c,
416.920c.  Thus, the new regulations eliminate the term "treating source," as well as what is
customarily known as the treating source or treating physician rule.  *See* 20 C.F.R. §§ 404.1520c,
416.920c.  In this case, Plaintiff filed her claim for benefits on February 7, 2017, well before March
27, 2017.  *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed).
Thus, the court analyzes Plaintiff's claim utilizing § 416.927 (providing the rules for evaluating
opinion evidence for claims filed prior to March 27, 2017).

ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Specific and legitimate reasons for assigning little or no weight to a treating physician's opinion, or a portion thereof, include "inconsistency with a claimant's testimony," *Townsend v. Astrue*, No. 6:12–cv–00261–SI, 2013 WL 687042, at *4 (D.Or. Feb. 25, 2013) (citing Andrews, 53 F.3d at 1043), the fact that "the opinion is conclusory and unsupported by objective medical findings," *Leanos v. Astrue*, No. 11–0068–CW, 2011 WL 4802520, at *4 (C.D.Cal. Oct. 7, 2011), inconsistency "with the physician's own treatment notes," *Id.*, inconsistency "with the independent opinion of a consulting examiner," *Id.*, inconsistency "with a non-examining physician's opinion that is itself supported by other record evidence," *Id.*, and the "absence of regular medical treatment during the alleged period of disability, *Chilcote v. Astrue*, No. 3:12–cv–00421, 2013 WL 2033540, at *5 (D.Or. Apr. 8, 2013).

**B.    Analysis**

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of Dr. Ellison and Dr. Adams and by failing to address the opinion of Dr. Polin. (Pl.'s Br. at 23.)

**1.    The Opinion of Dr. Ellison**

On June 13, 2015, Dr. John Ellison, M.D., examined Plaintiff and concluded that she suffered from chronic generalized pain, limited range of motion in the cervical spine, and chronic depression. (Tr. 478.) Functionally, Dr. Ellison opined that Plaintiff was capable of medium level work, and could occasionally reach in all directions, handle, finger, feel, push, and pull, with limited neck flexion. (Tr. 481.) Dr. Ellison also opined that Plaintiff could never climb ladders or

scaffolds, balance, stoop, kneel, crouch, or crawl, and that she could walk for one hour, stand for one hour, and sit for six hours in an eight-hour workday. (Tr. 480, 482.)

The ALJ gave little weight to the opinion of examining physician Dr. Ellison because "there is little in Dr. Ellison's report to support the limitations in sitting, standing, walking, and manipulative activities." (Tr. 525-26 (citing Tr. 476-77).) Specifically, the ALJ highlights that Dr. Ellison did not "observe signs of difficulty ambulating or using the hands. In fact, he reported that he [sic] claimant had excellent strength in the extremities, normal range of motion in the back and extremities, and normal sensation, which seems very inconsistent with limiting sitting, standing, walking, reaching, handling, fingering, and feeling." (Tr. 526 (citing Tr. 476-77).) Furthermore, the ALJ notes that Dr. Ellison did observe a significant decrease in neck range of motion, but noted earlier in her opinion, that Plaintiff's above, providers did not observe as significant a decrease in range of motion, which "suggests that the limitations attributed to the decrease in cervical range of motion are not reliable." (Tr. 526 (citing Tr. 380, 476-77, 869).) The ALJ further highlights the inconsistency between Dr. Ellison's opinion and the opinions of Plaintiff's providers stating "[i]t is notable that the claimant was not observed by healthcare providers to have persistently reduced range of motion in the upper extremities, decreased sensation in the hands, or signs of dysfunction in the use of the hands, which is inconsistent with the limitations reported by Dr. Ellison." (Tr. 526 (citing Tr. 403, 1156).) Moreover, the ALJ also found Dr. Ellison's opinion inconsistent with:

> evidence of improved neck pain after the 2012 surgery, the routine and conservative course of pain management after the surgery, the reports of benefiting from pain medication, the observations of normal strength and effective (albeit sometimes antalgic) ambulation, the limited observations of pain behavior, the lack of follow-up for recommended back and hip surgeries, and the report of improved walking with physical therapy.

(Tr. 526 (citing Tr. 382, 383, 386-88, 407, 411, 414, 441, 464, 476-77, 868-69, 975, 1103, 1165, 1181, 1196, 1238, 1256-57).) Additionally, the ALJ asserts Plaintiff's ability to work as a part-time hairdresser "seems very inconsistent with limiting standing to one hour in a workday, as the claimant reported that she sometimes has to stand for five hours." (Tr. 526.) Lastly, the ALJ argues the "reduction to occasional reaching, handling, and fingering, also seems inconsistent with the claimant's part-time hairdresser work as this type of work involves extending the arms away from the body (i.e. reaching) and using the hands." (Tr. 526.)

While Plaintiff argues for a different reading of the record, the ALJ's interpretation was rational. Therefore, the ALJ did not err in giving little weight to Dr. Ellison's opinion because it conflicted with Plaintiff's medical record and activities of daily living. Inconsistency between a physician's opinion and a plaintiff's activities of daily living is a specific and legitimate reason to discount the opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (citations omitted). The Court finds that the ALJ's cited reasons for assigning little weight to Dr. Ellison's opinion were specific and legitimate, and supported by substantial evidence. *Cf. Jackson v. Colvin*, No. 14-9935, 2016 WL 1273159, at *5 (C.D. Cal. Mar. 31, 2016) ("The ALJ needed only one specific and legitimate reason to reject the opinion of an examining physician, and he gave one here—that Dr. Lee's opinion was based on Jackson's unreliable self-reporting.").

## 2. The Opinion of Dr. Adams

Plaintiff's orthopedist, Dr. Adams, MD, assessed Plaintiff's right hip in August 2018. (*See* Tr. 887-91.) In his report, Dr. Adams stated that Plaintiff is "significantly disabled by her pain and symptoms." (Tr. 890.) Dr. Adams recommended right total hip arthroplasty given his assessment of significant degenerative changes within the right hip joint. (Tr. 890.)

The ALJ gave little weight to the opinion of Dr. Adams. (Tr. 526.) Specifically, the ALJ

asserts Dr. Adams's statement that Plaintiff is significantly disable is "an opinion on an issue

reserved for the [C]ommissioner, and as it does not indicate any specific limitations in work

activities, it is not very useful for evaluating the claimant's residual functional capacity." 19F/6

(Tr. 526.) Furthermore, the ALJ argues the opinion is inconsistent with the "routine and

conservative course of pain management, the reports of benefiting from pain medications, the

observations of normal strength and effective (albeit sometimes antalgic) ambulation, the limited

observations of pain behavior, the lack of follow-up for recommended the [sic] hip surgery, and

the report of improved walking with physical therapy." (Tr. 526 (citing Tr. 382, 383, 386-88,

407, 411, 414, 441, 464, 476-77, 868-69, 975, 1103, 1165, 1181, 1196, 1238, 1256-57).)

Additionally, the ALJ asserts the opinion "seems somewhat inconsistent with the claimant's part-

time work as a hairdresser, which suggest some ability to work despite her pain symptoms." (Tr.

526.)

　　While Plaintiff argues for a different reading of the record, the ALJ's interpretation was

rational. Therefore, the ALJ did not err in giving little weight to Dr. Adams's opinion because it

conflicted with Plaintiff's medical record and activities of daily living. Inconsistency between a

physician's opinion and a plaintiff's activities of daily living is a specific and legitimate reason

to discount the opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir.

1999) (citations omitted). The Court finds that the ALJ's cited reasons for assigning little weight

to Dr. Adams's opinion were specific and legitimate, and supported by substantial evidence. *Cf.*

*Jackson v. Colvin*, No. 14-9935, 2016 WL 1273159, at *5 (C.D. Cal. Mar. 31, 2016) ("The ALJ

needed only one specific and legitimate reason to reject the opinion of an examining physician,

and he gave one here—that Dr. Lee's opinion was based on Jackson's unreliable self-reporting.").

### 3.    The Opinion of Dr. Polin

The Plaintiff argues the ALJ failed to articulate what weight she assigned to Dr. Polin's report and that she was required to assign some weight. (Pl.'s Br. at 25.) The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013. Although the ALJ fails to state what weight she gave to the opinion of Dr. Polin, the ALJ did not err because the ALJ does not reject the opinion of Dr. Polin in any way. The ALJ discusses Dr. Polin's findings regarding his recommendation that Plaintiff obtain a lumbar fusion surgery to treat her persistent back and neck pain. (Tr. 522 (citing Tr. 975-76).) However, the ALJ notes, Plaintiff did follow-up with Dr. Polin after 2018. (Tr. 522 (citing Tr. 975-76).) The ALJ agreed with Dr. Polin that Plaintiff had back and neck problems (Tr. 517). The ALJ considered these impairments and incorporated them into Plaintiff's RFC. There was nothing in particular from Dr. Polin's report that the ALJ rejected that required any further explanation.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

PAGE 26 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 12 day of April, 2022.

HON. MARK D. CLARKE
United States Magistrate Judge